**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
Magistrate Judge S. Kato Crews

Civil Action No. 1:21-cv-01789-SKC

DAVID POLANER,

      Plaintiff,

v.

THE REGENTS OF THE UNIVERSITY OF COLORADO, a body corporate; and,
THOMAS MAJCHER, Chief of the Division of Pediatric Anesthesiology and Vice
Chair of the Anesthesiology Department (in his individual and official capacities),

      Defendants.

---

**ORDER RE: MOTIONS TO DISMISS [DKTS. 15 & 16]**

---

Both Defendants in this case have filed motions to dismiss [Dkts. 15, 16]. The
Court addresses both Motions with this Order. The Court has reviewed the Motions
and the related briefing and finds a hearing unnecessary. Both Motions are
GRANTED for the reasons stated below.

### A.  PERTINENT FACTS

The Court accepts the well-pleaded facts as true and views the allegations in
the light most favorable to the non-movant. *Casanova v. Ulibarri*, 595 F.3d 1120,
1124-25 (10th Cir. 2010). Plaintiff David Polaner, an accomplished anesthesiologist,
was employed by the University of Colorado for 18 years, working at its Anschutz
Medical Campus. [Dkt. 1, ¶2.] He signed a written employment agreement with

Defendant Board of Regents in December 2008 for a one year term subject to renewal. [*Id.* ¶21.] He was promoted to full professor in June 2010. [*Id.*]

In the spring of 2018, an event occurred in the MRI suite in which a nurse insisted that bloods be drawn at the time of anesthesia induction; Plaintiff, a nationally recognized authority in this field, explained to the nurse that there was no need to do so, and the nurse disagreed. [*Id.* ¶31.] Plaintiff then complained to his "superior," Defendant Majcher, Chief of the Division of Pediatric Anesthesiology at the University's affiliated Children's Hospital Colorado. [*Id.* ¶¶12, 31.] Plaintiff complained the conditions in the MRI suit were tantamount to a hostile work environment for him as an experienced physician, and he asked to receive no further assignments in the MRI suite until the issue could be resolved. [*Id.* ¶31.]

When he was subsequently asked to go to the MRI suite anyway, he declined to go based on the concerns he previously raised. [*Id.* ¶32.] This led to a meeting between Plaintiff, Majcher, and Vesna Jevtovic-Todorovic, Chair of the Anesthesiology Department ("Department Chair"), where Majcher and the Department Chair accused Plaintiff of insubordination. [*Id.*]

In April 2018, Majcher and the Department Chair met with Plaintiff and required him to sign a Corrective Action Letter. [*Id.* ¶¶44, 47.] Majcher claimed the letter was because he had received three complaints concerning Plaintiff's

professionalism and communication. [*Id.* ¶44.] Majcher and the Department Chair also required Plaintiff to sign a second letter, this one notifying Plaintiff he was being discharged, but he could stay in his position for one more year. [*Id.* ¶48.] After the meeting ended, Majcher told Plaintiff the discharge decision was "irrevocable." [*Id.* ¶49.] Having already been effectively discharged, Plaintiff felt forced to "retire" to protect his reputation in academic medicine, so he tendered his resignation effective February 14, 2019. [*Id.* ¶52.]

In November 2018, Majcher and the Department Chair implemented a new policy which eliminated Friday academic time because they believed members of the department were using academic time to "take advantage of the system" and obtain three-day weekends. [*Id.* ¶34.] Plaintiff is an Orthodox Jew who strictly observes the Sabbath and other mandates of Jewish law. [*Id.* ¶35.] Because of his religious observance, Plaintiff was unable to engage in clinical work on Friday afternoons at times proximate to the start of the Sabbat, or on Saturdays. [*Id.*¶36.] For the prior 18 years of his employment, Plaintiff was afforded accommodations to observe his religious faith, with the Board of Regents allowing him to maintain a fixed Friday academic day during which he would not be scheduled for regular work in the operating room on Fridays, but would instead engage in other clinical responsibilities before sundown. [*Id.* ¶38.] After the notice that academic time would no longer be

available on Fridays, Majcher sent an e-mail to Plaintiff inquiring how his religious observance might be accommodated; but he offered an accommodation "in name only," according to Plaintiff. [*Id.* ¶39.] Plaintiff was instead left to his own devices and the graciousness of his colleagues to either swap cases or agree to relieve him in the operating room on Fridays in order to arrive home prior to the onset of the Sabbath. [*Id.*]

After his resignation in February 2019, Plaintiff obtained a professorship at Seattle Children's Hospital and was granted clinical privileges there. [*Id.* ¶54.] He was also required to apply for clinical privileges at the University of Washington ("UW"), which required UW to obtain information from Plaintiff's prior superior, Majcher. [*Id.* ¶55.] In about February 2020, in response to questions on a form asking whether Plaintiff's privileges had ever been revoked, denied or suspended and whether his academic appointments have ever been modified or non-renewed, Majcher responded, "yes," which Plaintiff alleges was "patently, outrageously, intentionally and willfully false." [*Id.* ¶56.] This resulted in Plaintiff receiving a provisional appointment at UW Hospital rather than a permanent one. [*Id.* ¶59.]

In about December 2020, the Board of Regent's affiliate, Children's Hospital, withdrew from the Pediatric Regional Anesthesia Network (PRAN). Plaintiff alleges Children's Hospital became a founding member of PRAN through his efforts during

his prior employment with the Board of Regents, and "upon information and belief," Children's Hospital withdrew from PRAN at the direction of Majcher due to his discriminatory and retaliatory animus towards Plaintiff. [*Id.* ¶66, 67.]

Plaintiff brings three claims under 42 U.S.C. § 1983 alleging violations of his rights protected by the Fourteenth Amendment to the United States Constitution. He sues Majcher in his individual and official capacities and sues both Defendants for (1) violation of due process; (2) deprivation of equal protection; and (3) retaliatory differential treatment. Majcher and the Board of Regents have each moved to dismiss these claims.

## STANDARD OF REVIEW

### A.    Fed. R. Civ. P. 12(b)(1)

"Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)). Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)).

"A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis added).

**B.      Fed. R. Civ. P. 12(b)(6)**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted).

The *Twombly/Iqbal* pleading standard first requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example,

they state legal conclusions or merely recite the elements of a claim. *Id.* It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In this analysis, courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The standard is a liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)

## DISCUSSION

### A.   Board of Regents' Motion to Dismiss [Dkt. 15]

The Board of Regents argues the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) because the Board is an arm of the state entitled to Eleventh Amendment immunity. The Court agrees.

Eleventh Amendment immunity "bars a damages action against a State in federal court." *Harrison v. Univ. of Colorado Health Scis. Ctr.*, 337 Fed. App'x.750, 753 (10th Cir. 2009) (quoting *Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir.

1989)). To be entitled to Eleventh Amendment immunity, a party must demonstrate it is an "arm of the state." *Harrison*, 337 Fed. App'x. at 753.

The University of Colorado is a creation of Colorado statute. *See* Colo. Rev. Stat. § 23- 51-101, *et seq.* The Tenth Circuit has consistently found state colleges and universities, and their board of regents, are arms of the state which enjoy Eleventh Amendment immunity. *See, e.g., Murray v. Colorado*, 149 Fed. App'x 772, 773 (10th Cir. 2005) (Board of Regents of University of Colorado entitled to Eleventh Amendment immunity); *Innes v. Kansas State University*, 184 F.3d 1275, 1278 (10th Cir. 1999), *cert. denied*, 529 U.S. 1037 (2000) ("Because Kansas State University is an 'arm of the state,' it is entitled to assert Eleventh Amendment immunity."); *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 494 n.3 (10th Cir. 1998) ("[W]e have no doubt that UNMSM, its [Board of] Regents, and the Committee on Admissions are 'arms of the state,' entitled to Eleventh Amendment immunity."); *Univ. of Texas at Austin v. Vratil*, 96 F.3d 1337, 1340 (10th Cir. 1996) ("state colleges and universities…are entitled to Eleventh Amendment immunity").

Plaintiff urges the Court to ignore this precedent. While he acknowledges  the Tenth Circuit in *Rozek v. Topolnick*, 865 F.2d 1154 (10th Cir. 1989), "admittingly concluded the University of Colorado was entitled to Eleventh Amendment immunity[,]" he argues the Tenth Circuit's holding in *Rozek* "rests on a

misunderstanding of state law and conflicts with controlling Supreme Court authority." [Dkt. 17, pp. 15.] But he cites no case law establishing this conflict. And, to the contrary, since *Rozek*, both the Tenth Circuit and courts in this district have consistently found the University of Colorado to be an arm of the state for Eleventh Amendment purposes. *See Sturdevant v. Paulsen*, 218 F.3d 1160, 1170 (10th Cir. 2000) ("We have consistently held that state colleges and university are arms of the state."); *Dermansky v. Univ. of Colorado*, 445 F. Supp. 3d 1218, 1221 (D. Colo. 2020) ("the University of Colorado is an arm of the state"); *Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064, 1081 (D. Colo. 2017) ("The University of Colorado is an 'arm of the state' of Colorado[] and therefore appears to be entitled to sovereign immunity, as preserved by the Eleventh Amendment."); *Cuin v. Adams Cnty. Bd. of Cnty. Comm'rs*, Civ. No. 10-cv-01704-PAB-MEH, 2011 WL 2683116, at *4 (D. Colo. July 11, 2011) (the Board of Regents of the University of Colorado is an arm of the state).

Based on well-settled precedent, the Court finds the Eleventh Amendment bars Plaintiff's claims against the Board of Regents. It similarly bars Plaintiff's official-capacity claims against Majcher. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the

Eleventh Amendment."); *Smith v. Plati*, 56 F. Supp. 2d 1195, 1201-02 (D. Colo. 1999), aff'd, 258 F.3d 1167 (10th Cir. 2001) (Eleventh Amendment barred suit against director in his official capacity).[1] These claims are DISMISSED, without prejudice, for lack of jurisdiction.

**B.     Majcher's Motion to Dismiss [Dkt. 16]**

Majcher argues Plaintiff's claims are barred by the statute of limitations. Under Section 1983, claims "must be brought within the time period prescribed by state law for personal injury actions." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)). There is a two-year statute of limitations for personal injury actions in Colorado. Colo. Rev. Stat. § 13-80-102. And a civil rights action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Baker*, 991 F.2d at 632; *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (federal law governs the issue of when an action accrues).

---

[1] The Court has considered whether the exceptions from *Ex parte Young*, 209 U.S. 123 (1908), apply to abrogate Eleventh Amendment immunity as to Majcher in his official capacity, and finds these exceptions inapplicable—the Complaint fails to identify any ongoing violations of federal law; and with the latter, it does not seek prospective relief beyond its conclusory prayer to "[e]join Defendants from any further action in derogation of Plaintiff's constitutional rights[;]" and as discussed herein, the third claim for relief and portions of the first and second claims for relief are barred regardless of the relief sought. *See, e.g., Plati*, 56 F. Supp. 2d at 1202.

The gravamen of Plaintiff's Complaint includes: (1) the April 2018 meeting involving the Corrective Action Letter where Majcher told Plaintiff of the "irrevocable" decision not to renew Plaintiff's contract and where he was forced to sign two letters; (2) the November 2018 elimination of academic time; (3) the failure to accommodate his religious needs; and (4) his February 14, 2019 forced resignation. Each of these acts includes Plaintiff's associated allegations of discrimination, retaliation, disparagement, embarrassment, etc. But all of these actions occurred during Plaintiff's employment and prior to his February 14, 2019 resignation. Even assuming, for the sake of illustration, that Plaintiff's statute of limitations accrued when he resigned on February 14, 2019 at the latest, these claims are time-barred because Plaintiff did not file this lawsuit until July 1, 2021. The only alleged acts falling within Plaintiff's statute of limitations are (1) Majcher's February 2020 response on the UW credentialing form, and (2) Children's Hospital's December 2020 withdrawal from PRAN. [Dkt. 1 ¶¶56, 65.]

Plaintiff advocates for the Court's application of the continuing violation doctrine. The continuing violation doctrine is intended to ensure that if a claim is based on a series of collective wrongful acts, the court can consider all of the interrelated wrongful acts in determining liability, even if some of the acts fall outside the statute of limitations. *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 117

(2002). Since the time the parties completed briefing on the motion to dismiss, the Tenth Circuit has held the continuing violation doctrine is available in the Section 1983 context. *Herrera v. City of Espanola*, 32 F.4th 980, 997 (10th Cir. 2022) ("[W]e hold that a § 1983 litigant may rely on the continuing violation doctrine to overcome the statute of limitations where the first in a series of acts giving rise to a single violation occurs outside of the limitations period[.]") But the Tenth Circuit's new holding does not save Plaintiff here.

The continuing violation doctrine only applies when a series of acts gives rise to a single violation of a party's rights; it does not apply to a series of acts giving rise to separate violations. *Id.*; *see also Hamer v. City of Trinidad*, 924 F.3d 1093, 1098 (10th Cir. 2019) (continuing violation doctrine applies when plaintiff's claim seeks redress for injuries resulting from a series of separate acts that "collectively constitute one unlawful act" as opposed to conduct that is a discrete unlawful act). "Stated differently, one violation continues when the conduct as a whole can be considered as a single course of conduct." *Hamer*, 924F.3d at 1098 (internal quotations and citation omitted).

Plaintiff's Complaint fails to allege sufficient facts to plausibly tie the two 2020 events—Majcher's February 2020 response to UW, and Children's Hospital's December 2020 withdrawal from PRAN—to the time-barred events occurring in 2018

12

and on February 14, 2019. For one, Plaintiff was no longer employed by the University when these events occurred in 2020, rendering their inclusion with the 2018 and 2019 employment actions as "one unlawful act" less plausible without more facts. Second, the Complaint alleges no well-pleaded actions by Majcher for an entire year between Plaintiff's February 2019 resignation and Majcher's February 2020 response to UW—this renders the alleged "continuing" nature of Majcher's conduct similarly less plausible. And third, any allegations which strive to tie these events together are conclusory and made "upon information and belief" and without sufficient facts to plausibly support those beliefs. [Dkt. 1, ¶¶53, 67.] For these reasons, the Court does not find the continuing violation doctrine applies to the time-barred events alleged in the Complaint.

As concerns the two timely events, dismissal is still warranted. Nothing in the facts alleged concerning the timely events establishes plausible due process or equal protection claims. This is in part due to the conclusory nature of the allegations surrounding these incidents. For example, the Complaint is internally inconsistent. On the one hand, it alleges in April 2018 Majcher told Plaintiff he was being discharged (non-renewed) and the decision was "irrevocable." [Dkt. 1, ¶¶43, 48, 49]. On the other hand, it alleges Majcher's February 2020 affirmative response on UW's credentialing form that Plaintiff's academic appointment had previously been non-

renewed was an "intentionally falsified statement[.]"[2] Also, many of the allegations

are conclusory, as in these examples: "The intentionally falsified statement made by

Defendant Majcher, an act in continuance of his discriminatory and retaliatory

animus towards Plaintiff, caused Plaintiff profound embarrassment and

humiliation[;]" "Upon information and belief, CHCO withdrew from PRAN at the

direction of Defendant Majcher, due to his discriminatory and retaliatory animus

towards Plaintiff];]" "Defendant Majcher's actions were outrageous and malicious and

were intended to harm Plaintiff and were undertaken in reckless disregard of

Plaintiff's protected rights, entitling Plaintiff to punitive damages as against the

individual defendant herein." [*Id.*, ¶¶57, 67, 73.] Neither the rote recital of the

elements of a claim nor the use of legal buzz words supplies the factual circumstances

necessary to support conclusory allegations. *See Tal v. Hogan*, 453 F.3d 1244, 1261

(10th Cir. 2006).

Finally, Plaintiff's third claim for relief is for "Fourteenth Amendment

Retaliatory Differential Treatment under 42 U.S.C. § 1983." But, as Majcher argues,

the Tenth Circuit (like other circuits) has long-held "a theory of liability for

---

[2] The allegations in the Complaint suggest the form-question broadly lumped non-renewal in with other actions regarding Plaintiff's clinical privileges and modification of his academic appointment. [Dkt. 1, ¶56.] But this does not alter the Court's view of the inconsistency between these allegations.

retaliatory conduct [does not] come within § 1983." *Long v. Laramie Cnty. Cmty. Coll. Dist.*, 840 F.2d 743, 752 (10th Cir. 1988). *See also Teigen v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007) ("The kind of bare retaliation claim at issue in this case simply cannot form the basis for a constitutional equal protection violation."); *Tafoya v. Adams*, 816 F.2d 555, 558 (10th Cir. 1987) ("The right to be free of retaliatory discharge provided for by Title VII does not entitle one to relief under [Section] 1983[.]"); *Bernheim v. Litt*, 79 F.3d 318, 323 (2nd Cir. 1996) ("[W]e know of no court that has recognized a claim under the Equal Protection clause for retaliation…."); *Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004) (finding the right to be free of retaliation may be vindicated under the First Amendment or Title VII, but not the Equal Protection clause); *Wilcox v. Lyons*, 970 F.3d 452, 461-62 (4th Cir. 2020) (a "pure or generic retaliation claim"…"is not cognizable under the Equal Protection clause.") (collecting cases).

Plaintiff does not allege retaliation against him for his exercise of any specific constitutional right; he identifies no constitutional right he exercised whatsoever. [*See generally*, Dkt. 1.] He instead alleges, in conclusory fashion, "Defendants' differential treatment of Plaintiff, including, but not limited to their decision to discipline and discharge Plaintiff from his professorship was motivated, in whole or in part, by his exercise of constitutionally protected rights and in derogation of his

constitutional entitlements." [*Id.* ¶82.] This purely generic retaliation claim is not sustainable under Section 1983. *Long*, 840 F.2d at 752.

*     *     *

Based on the above,

IT IS ORDERED Plaintiff's claims against the Board of Regents and Majcher in his official capacity are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction;

Plaintiff's due process and equal protection claims against Majcher in his individual capacity and based on events occurring prior to July 1, 2019, are DISMISSED WITH PREJUDICE as untimely;

Plaintiff's due process and equal protection claims against Majcher in his individual capacity and based on the 2020 alleged events are DISMISSED WITHOUT PREJUDICE for failure to state claims under Fed. R. Civ. P. 12(b)(6); and,

Plaintiff's third claim for relief is DISMISSED against all Defendants WITH PREJUDICE.[3]

DATED: September 27, 2022

---

[3] The Court does not address any other bases for dismissal argued by Defendants in their respective motions. Any claims for injunctive relief against either Defendant are dismissed for the same reasons analyzed and found above.

BY THE COURT:

S. Kato Crews
United States Magistrate Judge

17